IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

CARL HAKANSON,                          )
                                        )
                    Plaintiff,          )        Civil No. 10-6094-HO
                                        )
          v.                            )        ORDER
                                        )
BOISE, INC. an Oregon corporation,      )
and ASSOCIATION OF WESTERN PULP &       )
PAPER WORKERS, LOCAL #396,              )
                                        )
                    Defendants.         )
_____)

     Plaintiff, Carl Hakanson, filed this action in the Circuit
Court for the County of Marion alleging intentional infliction of
emotional distress (IIED), wrongful discharge, intentional
interference with economic relations and defamation against
defendants Boise, Inc. and the Association of Western Pulp & Paper
Workers Association, Local 396 (the Union).  Defendants removed the
action to this court asserting the state law claims are preempted
by federal law.

Defendants moved to dismiss the complaint based on preemption under the Labor Management Relations Act (LMRA) and its statute of limitations.  Plaintiff responded to the motions to dismiss, but also filed an amended complaint.  Accordingly, the initial motions to dismiss (## 2, 7) are denied as moot.  The amended complaint asserts claims for IIED against both the Union and Boise, wrongful discharge against Boise, and defamation against the Union.

Plaintiff has also moved to remand asserting untimely removal[1] and that federal law does not apply.  The issue with respect to the applicability as to federal law is the same issue with respect to the motions to dismiss and that issue is whether plaintiff's claims are preempted by the LMRA.  As discussed below, the claims are preempted and the motions to dismiss will be granted.

<u>ALLEGATIONS</u>

Plaintiff alleges as follows:

Boise employed plaintiff as maintenance mechanic from September 22, 1995 until his termination on February 29, 2008.  At the time of his termination, plaintiff was a member in good standing of the Union.  The terms of plaintiff's employment and union membership arose from the agreement between Boise Cascade L.L.C. in Salem, Oregon and the Union executed in 2006 (the CBA).

---

[1]Plaintiff has since conceded that defendants timely removed this action.

2 - ORDER

Boise could discipline employees only for just and sufficient cause and any decision to terminate must be based upon the employee's entire work record and incidents leading up to the discipline.  The CBA prohibited discrimination based on age or disability.  In addition, the CBA placed a duty on Bosie and the Union to further the safety, health and welfare of employees.  No agreements between the Union and an employee or Bosie and an employee conflicting with the CBA were permitted.  Any part of the CBA in conflict with state or federal law would be superseded by the applicable law.

On February 22, 2008, another employee, Thomas Dorsey, entered the break room where plaintiff was eating his lunch and confronted plaintiff about a supply of rags.  Dorsey quickly approached plaintiff in a threatening manner with both fists clenched and one fist raised while verbally threatening plaintiff's physical safety. While physically able to do so, Dorsey had the intent to do violence to and cause hostile contact with plaintiff, at which point plaintiff, who was seated in a defenseless position, stood up to defend himself.  At that point Dorsey continued at plaintiff reasonably appearing to subject plaintiff to imminent unlawful force.  Plaintiff took action that he believed was, and actually was, reasonable, in defending himself by punching Dorsey twice in the face, using the degree of force reasonably believed necessary in defending himself.  Dorsey, rather than retreating at that

3 - ORDER

point, which was a safe and reasonable option for him, continued at plaintiff, throwing his body into plaintiff, intentionally causing harmful, offensive, and insulting contact with plaintiff, knocking plaintiff over the chair he had been sitting on and into a metal bookcase and counter. Plaintiff's ribs caught the corner of the counter causing bruises, pain and breathing trouble.

A disinterested third-party, Gerald Minten, told Boise that Dorsey provoked the fight. Boise terminated both Dorsey and plaintiff on February 29, 2008. At the time, Boise was aware that plaintiff had legally and properly defended himself and that plaintiff had prostate cancer. Plaintiff, through the Union, filed a grievance.

On March 7, 2008, Boise denied the grievance stating, "Grievance denied, no violation of the contract. [Plaintiff] violated posted work rules by punching [Dorsey] in the face two times." Boise also denied Dorsey's grievance stating, "Grievance denied, no violation of the contract. [Dorsey] violated posted work rules by provoking the altercation as well as created a hostile/offensive environment in violation of our harassment policy."

On March 10, 2008, the Union requested arbitration on plaintiff's and Dorsey's grievance. On Aril 15, 2008, the Union wrote to Boise, that plaintiff needed to "be returned to work with time served to be considered a suspension" and that Dorsey's

"termination be reduced to a reprimand and that he be paid back pay for his time off." [The Union] wrote: "[Plaintiff] was the one that became physical and punched [Dorsey]. A suspension is in order." "[P]ast history shows [Boise] has never terminated anyone for any type of altercation, verbal or physical. Both employees also have a good record which should be considered in their favor." On April 18, 2008, Boise stated:

> "The serious provocation that [Dorsey] engaged in ([Dorsey] specifically threatened to 'get Physical' with [Plaintiff] while approaching him) leading [Plaintiff] to punch [Dorsey] is the first such instance anyone can remember for at least fifteen years."

> "[Dorsey] verbally threatened to 'get physical' with [Plaintiff]. [Minten] confirmed this and [Dorsey] admitted he made this comment. [Minten] also confirmed that [Dorsey] was very aggressive and threatening towards [Plaintiff]. [Plaintiff] admitted he punched [Dorsey] two or three times … [t]heir termination was for just and sufficient cause; the grievances are denied."

On March 27, 2008, the Oregon Employment Department issued an administrative decision granting Dorsey unemployment benefits and on April 22, 2008, a hearing was held upon Boise's appeal of that decision. Both the Union and Boise participated in that hearing. Boise intentionally did not call plaintiff as a witness and Dorsey prevailed. Union representative Ken Hardwick attended and represented Dorsey; however, the Union refused to represent plaintiff at his hearing before the Oregon Employment Department for his benefits. The result was that Dorsey received unemployment benefits, but that Plaintiff, 58 years old, diagnosed with prostate

cancer and needing radiation treatment, received no unemployment benefits.

On April 24, 2008, in response to a request from the local Union representative for a recommendation on the respective grievances filed by Dorsey and plaintiff, Union representative Ken Hardwick had the following conclusions:

· "[Plaintiff] and [Dorsey] were involved in a verbal altercation which led to [Plaintiff] punching [Dorsey] in the face."

· "[Dorsey] did not throw any punches."

· "Both [Plaintiff and Dorsey] went to the doctor the following day and both sustained physical injuries from the altercation."

· "[Plaintiff] was the only one that threw any punches. This is not only a serious violation of violence in the workplace but it is also a violation under Oregon State law."

· "I don't believe an arbitrator would give back [Plaintiff's] job…. I don't believe [Plaintiff's] grievance could be won in arbitration."

· "[Dorsey's] case is much different that [sic] [Plaintiff's]. His defense is that he was never physical with [Plaintiff], only to the point of self defense by grabbing [Plaintiff] to prevent from being punched again."

· "I think [Dorsey] does have at least a 50/50 chance of winning his case in arbitration. I recommend that his case be referred to arbitration."

On May 5, 2008, the Union dropped plaintiff's grievance.

The arbitrator, with respect to Dorsey's grievance, noted Boise's deliberate decision not to call plaintiff as a witness in a matter in which Boise had the burden to establish that Dorsey's

6 - ORDER

termination was wrongful. The result was that Boise essentially gave Dorsey his job back–"[Boise] did not prove that [Dorsey] did what he was discharged for; and therefore [Boise] did not establish just cause for the discharge. [Dorsey] must be reinstated and made whole."

At Dorsey's hearing, the Union took the position that the altercation was not a fight but an assault by plaintiff on Dorsey and that if plaintiff would have simply returned the supplies or told where they were, the incident would not have happened.

Despite being informed by plaintiff, by Minten, by Boise, and by the unemployment benefits ALJ, that on February 22, 2008 plaintiff had rightfully and properly defended himself against Dorsey, and despite Dorsey himself admitting that on that day and based on Dorsey's conduct, plaintiff could have reasonably feared that he would be subjected to imminent unlawful physical force by Dorsey, the Union, through Ken Hardwick, made, among others, the following defamatory statements to Dorsey regarding the February 22, 2008 incident: (1) plaintiff assaulted Dorsey and Dorsey merely and rightfully defended himself from plaintiff; (2) plaintiff's conduct was of a criminal nature under Oregon law; and (3) plaintiff's conduct constituted a serious violation of Boise policy. The Union, through Ken Hardwick, directed and encouraged Dorsey to repeat those statements to law enforcement and to bring a civil lawsuit against plaintiff related to the incident. These

statements were made pursuant to agreements and/or understandings between Dorsey and the Union that were separate from and in conflict with the 2006 Agreement. Dorsey repeated these defamatory statements as intended by the Union.

After getting his job back with Boise, and then losing it again for reasons unrelated to the February 22, 2008 incident, at the Union's encouragement and based on the Union's defamatory statements and conclusions, Dorsey filed a civil lawsuit against plaintiff asserting claims against plaintiff for what the Union had told him was an intentional assault by plaintiff.


DISCUSSION

Claims for violation of a contract between an employer and a labor organization representing employees in an industry affecting interstate commerce may be brought in federal district court. 29 U.S.C. 185(a). A state law claim may be removed to federal court under the complete preemption doctrine if federal law both completely preempts the claims and supplants it with a federal claim. Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987).

An action for breach of a collective bargaining agreement is governed exclusively by the LMRA and the LMRA entirely displaces any state claim based on a collective bargaining agreement. Id. A plaintiff cannot escape the preemptive effect of the LMRA by

8 - ORDER

recasting his contract claims as tort claims. The key to determining the scope of preemption is not how the complaint is cast, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement. Id. at 999. The LMRA does not, however, preempt every employment dispute tangentially involving a collective bargaining agreement; for example, state rules establishing rights independent of a labor contract are not preempted. The test for preemption of a tort claim is whether the state confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. Id. A state law claim is substantially dependent on a collective bargaining agreement if it cannot be resolved without interpreting the applicable collective bargaining agreement. Cramer v. Consolidated Freightways Inc., 255 F.3d 683, 689 (9th Cir. 2001).

General principals courts employ to determine when an IIED claim will be preempted include: (1) if the collective bargaining agreement specifically covers the conduct at issue, the claim will generally be preempted; (2) if the collective bargaining agreement does not cover the allegedly extreme and outrageous conduct, the IIED claim will not be preempted; (3) even if the collective bargaining agreement does purport to cover the conduct at issue,

9 - ORDER

the IIED claim still may not be preempted if it has been tacked on
to the violation of a separate specific non-negotiable state
statute, the violation of which always rises to the level of
outrageousness.  Romero v. San Pedro Forklift, Inc., 266 Fed.Appx.
552, 557 (9th Cir. 2008).


A.    IIED and Wrongful Discharge Claim Against Boise

     Plaintiff asserts that his IIED claim and wrongful discharge
claim against Boise are intertwined.  Plaintiff contends that he
was wrongfully terminated for reasonably, properly and lawfully
exercising his legal right to defend himself from what reasonably
appeared to be a co-worker's imminent unlawful force.  Such an
assertion is intertwined with the assertion that Boise had just
cause under the CBA to terminate plaintiff.  In addition, the
alleged violation does not violate a separate specific state
statute, much less one that always rises to the level of
outrageousness.

     Plaintiff relies on the Oregon Constitution's principle that
laws for punishment shall be founded on protection of society,
personal responsibility, and accountability, Or. Const. Art. 1 §
15, the Oregon Constitution's right to bear arms (but in strict
subordination to civil power) id. at Art 1 § 27, the Oregon's
criminal assault statute, ORS § 163.160, Oregon's criminal
harassment statute, ORS § 166.065, and Oregon's self-defense

10 - ORDER

statute, ORS § 161.209 and cases applying these provisions.  None of these statutes or case law make it a violation to terminate an employee for fighting even if the fight is the result of legal right self-defense.  Nor was plaintiff discharging a sufficiently important public duty when he defended himself.  As held in <u>Babick v. Oregon Arena</u>, 333 Or. 401, 411 (2002) an employer is not liable for wrongful discharge of security guards conducting lawful arrests of concert patrons because the desire of a lawful and orderly society was not enough of a public duty to support the guards' wrongful discharge claim.  Thus, the allegations in the complaint do not demonstrate that Boise has violated any specific statute or committed a wrongful termination.  Even if such conduct could support a wrongful termination claim, wrongful termination does not equate to outrageous conduct.  <u>See</u> <u>Madani v. Kendall Ford, Inc.</u>, 312 Or. 198, 204 (1991) (The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior).  Thus, plaintiff's claim must turn on whether there was just cause, under the CBA, for his termination and therefore is preempted.


B.   <u>IIED and Defamation Claim Against the Union</u>

     Plaintiff asserts that the IIED claim against the Union is intertwined with his defamation claim and is based on the Union defaming him despite its prior knowledge and involvement in the

11 - ORDER

matter through the grievance process related to him.  Plaintiff, however, contends the defamatory statement occurred outside the grievance process.  The alleged defamatory statements and the grievance process cannot be so easily separated.  The statements were in connection with the Union's representation of Dorsey in his grievance process and related to the Union's failure (wrong or right) to represent plaintiff in his grievance process.  The IIED claim as well as the defamation claim  are, in reality, failure to represent claims preempted by the LMRA.

Plaintiff's state law claims are preempted by the LMRA and as such removal was proper.  The motion to remand is be denied.  LMRA claims are subject to a six-month statute of limitations.  <u>See DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, (1983).  Plaintiff did not timely file his complaint.  Accordingly, the motions to dismiss are granted.


<u>CONCLUSION</u>

For the reasons stated above, defendants' initial motions to dismiss (#2 and #7) are denied, plaintiff's motion to remand (#14) is denied, defendants motions to dismiss (#17 and #19) are granted and this action is dismissed.


DATED this __2nd__ day of July, 2010.

                                    __s/ Michael R. Hogan_____
                                    United States District Judge


12 - ORDER